# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class CASEY A. GARRISON**
**United States Army, Appellant**

ARMY 20110545

Headquarters, 2d Infantry Division
Thomas M. Kulish, Military Judge
Colonel Jeffery D. Pederson, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Ian M. Guy, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Elisabeth A. Claus, JA; Captain Timothy C. Erickson, JA (on brief).

22 November 2013

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of aggravated sexual assault and one specification of indecent acts, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2006 & Supp. III) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge and confinement for two years.  The convening authority approved only so much of the sentence as provided for a bad-conduct discharge and confinement for twenty-two months.  The convening authority waived automatic forfeitures for a period of six months.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises a single assignment of error to this court, which merits discussion, but no relief.  Additionally, those matters appellant personally raises pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are without merit.

GARRISON — ARMY 20110545

## BACKGROUND

In his assignment of error to this court, appellant alleges he received ineffective assistance of counsel in the post-trial phase of his court-martial. Specifically, appellant asserts that three weeks after his conviction, while he was being held in a confinement facility in Korea awaiting transfer back to the United States, he provided one of his two trial defense counsel, Captain (CPT) CB, with a personal letter addressed to the convening authority. Appellant states the letter was intended for inclusion in his request for clemency.

Appellant was then transferred back to Joint Base Lewis-McChord, Washington to serve the remainder of his sentence. Appellant asserts that his personal letter was never submitted in his clemency matters, resulting in a violation of his Sixth Amendment right to effective counsel in that his defense counsel failed to submit all of appellant's matters to the convening authority pursuant to Rule for Courts-Martial 1105(b).

In support of this allegation of error, appellant provided a sworn affidavit wherein he stated:

> [W]hile still confined in Korea . . . . I gave [CPT CB] my personal clemency letter for my post trial matters.
>
> . . . I was transferred back to the United States . . . . I contacted [CPT FO], my other defense counsel. I asked [CPT FO] if he was going to submit my letter for clemency. He said he did not have a letter from me. [He] said if I wanted to write one then I had to get it to him in the next day or two because there was a deadline. I asked [CPT FO] why he did not notify me earlier and he brushed off my question by saying he was busy. I also told [CPT FO] that there was no way that I could reproduce my letter in such a short period of time, or else [sic] it would not be a good reflection of me. [Captain FO] wanted to know if he could submit what he had and I felt like I had no other option but to agree. So I agreed.

Appellant stated the letter he would have provided the convening authority background information on him, including the impact the case has had on him and his family.

Specifically, the affidavit states:

2

> I explained . . . that the Army had been my life and I wanted nothing more than to be returned to duty. I requested to even be placed in a position to help counsel other Soldiers so that they do not engage in risky sexual actions.
>
> I also explained that I had never been in trouble in my life and that I was not a malicious person. I said I made bad decisions that night, but that I was not a bad person. There was no motive to commit any misconduct. I explained that I am married and have three kids and the court-martial has had a great impact on them. I expressed concern about being able to provide for them and their well-being since I was the sole provider.

Appellant states he also requested the convening authority disapprove the findings of guilty and the bad-conduct discharge.

In response to this allegation of error and pursuant to an order by this court, appellant's two trial defense counsel both submitted affidavits. Captain CB stated that the appellant did not give him a letter during his visit with the appellant on 11 July 2011 at the confinement facility at Camp Humphries. Captain FO stated that he requested but did not receive a personal letter from the appellant. Captain FO states that he spoke to appellant on 20 December 2011 and again 3-4 January 2012 about writing a clemency letter. On 16 February 2012, after receiving a 20-day extension to submit clemency matters, CPT FO states he called appellant and told him matters were due to the convening authority on 22 February 2012. He further advised appellant of the content of the submission that he had written on his behalf. The appellant authorized him to submit that material.

Captain FO submitted the clemency matters on 22 February 2012. In the clemency matters, CPT FO requested that the convening authority reduce appellant's punishment based on the "mitigating" circumstances surrounding the offense, alleged command-imposed restriction on appellant for the year prior to his court-martial, and post-trial processing delays. Specifically, he requested disapproval of the bad-conduct discharge, disapproval of the finding of guilty of Specification 1 of Charge I, and order for a reduction of confinement to "time served." The convening authority granted the appellant clemency in the form of a two-month reduction in confinement, specifically to moot any issue regarding post-trial processing delays in appellant's case.

3

## LAW AND DISCUSSION

*Ineffective Assistance of Counsel*

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). In the military, this guarantee extends to assistance with the post-trial phase of a court-martial. *United States v. Lee*, 52 M.J. 51, 52 (C.A.A.F. 1999). We review de novo claims that an appellant did not receive the effective assistance of counsel. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

"In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)." *Gooch*, 69 M.J. at 361 (citations omitted). To overcome the presumption of competence, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

This Court applies a three-part test to determine whether the presumption of competence has been overcome:

> 1. Are the allegations true, and, if so, is there any reasonable explanation for counsel's actions?
>
> 2. If the allegations are true, did counsel's performance fall measurably below expected standards?
>
> 3. Is there a reasonable probability that, absent the errors, there would have been a different outcome?

*United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991). In the context of a post-trial claim for ineffectiveness, our superior court has modified the third step, requiring only that there be some "colorable showing of possible prejudice." *Lee*, 52 M.J. at 53 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

When assessing *Strickland's* first prong, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citation omitted). When challenging the performance of trial defense counsel, the appellant "bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F.

2007) (citation omitted). When there is a factual dispute, we determine whether further fact finding is required under *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). If, however, the facts alleged by the defense would not result in relief under the high standard set by *Strickland*, we may address the claim without the necessity of resolving the factual dispute. *Ginn*, 47 M.J. at 248.

After consideration of the record of trial, the pleadings, and the post-trial affidavits, we conclude a fact-finding hearing is not required in this case. Even if appellant's assertion were true and his defense team deficient in that they received a letter from appellant and failed to submit it to the convening authority, appellant has failed to establish that the deficiency resulted in prejudice. We find that there is no reasonable probability of a more favorable result given the purported contents of the appellant's letter, the nature of the crimes, and what was submitted to the convening authority in accordance with Rule for Courts-Martial 1105.[*]

Although appellant's letter would have provided another personal plea to the convening authority for clemency, the information appellant described as contained in his letter was already presented to the convening authority at least twice. Specifically, the matters were not only included within the record of trial in the appellant's unsworn statement, but also within the appellant's previous request for a deferral and waiver of forfeitures, a request the convening authority approved. At action, the convening authority further waived the automatic forfeitures for an additional six months for the benefit of appellant's wife and children. This evidences the convening authority's recognition of appellant's family situation. Under the facts of this case, we find the appellant has failed to make a colorable showing of possible prejudice.

## CONCLUSION

On consideration of the entire record, the submissions of the parties, and those matters personally raised by appellant pursuant to *Grostefon*, 12 M.J. at 431, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

---

[*] The Staff Judge Advocate recommended that the convening authority approve a two month reduction in confinement to moot any issue concerning post-trial processing delay.

GARRISON — ARMY 20110545

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court